# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2020

Lyle W. Cayce
Clerk

No. 19-60063

JEFFREY BUTTS; KIMBERLY BUTTS; SHARRON BUTTS; SHANALE RENEE HILL; SANDRA JONES; PATRICIA COX; LANE TOWNSEND,

Plaintiffs - Appellants

v.

ROSEMARY AULTMAN, in her Official Capacity as Chairman of the State Board of Education; DOCTOR CAREY M. WRIGHT, in her Official Capacity as Superintendent of the Mississippi Department of Education; JASON DEAN, in Official Capacity as Member of the Mississippi State Board of Education; BUDDY BAILEY, in Official Capacity as Member of the Mississippi State Board of Education; KAMI BUMGARNER, in Official Capacity as Member of the Mississippi State Board of Education; KAREN ELAM, in Official Capacity as Member of the Mississippi State Board of Education; JOHNNY FRANKLIN, in Official Capacity as Member of the Mississippi State Board of Education; WILLIAM HAROLD JONES, in Official Capacity as Member of the Mississippi State Board of Education; JOHN KELLY, in Official Capacity as Member of the Mississippi State Board of Education; CHARLES MCCLELLAND; WINONA MUNICIPAL SEPARATE SCHOOL BOARD; FRANK MCCLELLAND, in Official Capacity as Member of the Mississippi State Board of Education,

Defendants - Appellees

Appeal from the United States District Court for the
Northern District of Mississippi

Before WIENER, HIGGINSON, and HO, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

No. 19-60063

Seven residents of Montgomery County, Mississippi ("the County"), filed this lawsuit against the County, the Winona Municipal Separate School Board, and several state officials in their official capacities. Their claims arise out of the Mississippi legislature's July 2016 decision to administratively consolidate two school districts and restructure the school board responsible for governing the newly-formed district. Plaintiffs allege that these actions violated their right to equal protection of the laws by depriving them of the ability to participate equally in the district's decision-making process.

The district court denied plaintiffs' motion for a temporary restraining order and a preliminary injunction and granted the defendants' motion to dismiss. For the following reasons, we AFFIRM.

I.

In July 2016, the Mississippi legislature passed Miss. Code Ann. § 37-7-104.4, which provided for the administrative consolidation of the Winona Municipal Separate School District and the Montgomery County School District. Under the terms of the statute, the territory of the two districts became a single district—the Winona-Montgomery County Consolidated School District—on July 1, 2018. The statute contains a series of provisions pertaining to the creation of the consolidated district's five-person school board. It identifies two distinct phases in the school board's creation: (1) the interim board, and (2) the permanent board. *See* § 37-7-104.4(3)(b).

From July 1, 2018 to January 1, 2019, an interim board was tasked with governing the consolidated district. *Id.* The statute specified that the interim board was to be comprised of "the existing members of the Board of Trustees of the Winona Municipal Separate School District." *Id.* All members of the

2

No. 19-60063

Winona Board of Trustees were appointed by the Board of Aldermen of the City of Winona. § 37-7-104.4(3)(b)(i).

Beginning on January 1, 2019, the statute provided for the creation of a permanent school board. § 37-7-104.4(3)(b). At that time, the three members of the interim board "with the most years remaining in their terms" would retain their positions on the permanent board. § 37-7-104.4(3)(b)(i). The remaining two members of the board were to be elected to a four-year term "by the electors of Montgomery County residing outside of the Winona corporate limits." § 37-7-104.4(3)(b)(ii). In order to facilitate the election, the statute specified that the area of the County outside of the Winona corporate limits would be apportioned "into two . . . proportionately equal single member board of trustee election districts." § 37-7-104.4(3)(b)(iii). Through these provisions, the statute established a blended system of representation on the permanent board. Two members of the permanent board are elected by residents who live outside of the Winona corporate limits—a population accounting for approximately 57% of the County's total population. The three remaining members are appointed by the Board of Aldermen of Winona—a group that represents Winona residents, who make up 43% of the County's population.

In conformance with the terms of the statute, the interim board for the new district held office from July 1, 2018 to January 1, 2019. Montgomery County's Board of Supervisors drew two election districts in the territory outside of Winona, and, in November 2018, each district elected one school board member. The permanent board took office on January 1, 2019.

Plaintiffs are residents of Montgomery County who reside outside of Winona.[1] They argue that the statute's provisions regarding the formation of

---

[1] Some of the plaintiffs, including Patricia Cox and Lane Townsend, were also previously employed by the former Montgomery County School District.

3

No. 19-60063

the interim board and the permanent board violate the Equal Protection Clause. They also allege that the defendants acted unconstitutionally when they took certain actions on behalf of the consolidated school district, including terminating employees of the Montgomery County School District. They initiated this lawsuit on November 17, 2017[2] and subsequently filed a motion for a temporary restraining order and a preliminary injunction. On December 21, 2018, the district court denied their request for preliminary relief and granted defendants' motion to dismiss.[3] Plaintiffs timely appealed the judgment.[4]

II.

We "review a district court's grant of a motion to dismiss de novo, applying the same standard applied by the district court." *Masel v. Villarreal*, 924 F.3d 734, 742–43 (5th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 743 (internal quotation marks omitted). The court must "accept as true any well-pleaded factual allegations," but it is not required to accept "legal conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When applying rational basis doctrine to a dismissal for

---

[2] The lawsuit was originally filed in the Southern District of Mississippi, *id.*, but it was subsequently transferred to the Northern District of Mississippi.

[3] The order granting the motion to dismiss did not adjudicate the claims against Montgomery County. Thus, the claims against Montgomery County are not at issue in this appeal.

[4] After filing their notice of appeal, plaintiffs obtained an entry of judgment pursuant to Federal Rule of Civil Procedure 54(b). We therefore have jurisdiction over this appeal. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 539 n.1 (5th Cir. 2005) (holding that an appeal is timely if it is "taken from an order that 'would have been appealable if immediately followed by the entry of judgment pursuant to Federal Rule of Civil Procedure 54(b)'" (citation omitted)).

No. 19-60063

failure to state a claim, a legislative classification must be treated as valid if a court is able to hypothesize a legitimate purpose to support the action." *Glass v. Paxton*, 900 F.3d 233, 245 (5th Cir. 2018) (internal quotation marks omitted).

III.

Plaintiffs argue that the statute violates their right to equal protection by diluting or silencing the voices of Montgomery residents who live outside of Winona. Specifically, they challenge the structure of both the interim board and the permanent board. Though they "explicitly disavow[]" a race-based equal-protection claim, they argue that the statute discriminates against them on the basis of residence, denying them equal representation in matters related to the consolidated school district.

In order to state a claim for an equal protection violation, plaintiffs must show that "two or more classifications of similarly situated persons were treated differently" under the statute. *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) (citing *Stefanoff v. Hays Cty.*, 154 F.3d 523, 525–26 (5th Cir. 1998)). Once that threshold showing is made, the court determines the appropriate level of scrutiny with which to review the challenged statute. "Strict scrutiny is required if the legislative classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973)). If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relationship to a legitimate governmental purpose. *Id.* at 417.

A.

During its six months of existence, the interim board was comprised entirely of former members of the Winona School Board, who were appointed

No. 19-60063

by the Winona Board of Aldermen. Plaintiffs argue that this structure violates the Equal Protection Clause because it "exclud[es] every single person who does not live in the City of Winona from participating or having representation on the board."

Plaintiffs' claim against the interim board is foreclosed by the Supreme Court's decision in *Sailors v. Board of Education of Kent County*, 387 U.S. 105 (1967). In that case, the Court held that "state or local officers of the nonlegislative character," including school board members, need not be elected and may instead "be chosen by the governor, by the legislature, or by some other appointive means." 387 U.S. at 108. The Court clarified that the strict "principle of 'one man, one vote,'" which was held to be constitutionally required in state elections in *Reynolds v. Sims*, 377 U.S. 533 (1964), "has no relevancy" to an appointive selection scheme, *Sailors*, 387 U.S. at 111. Because there is no fundamental right to elect school board members, there is also no constitutional requirement for school boards to be representative of the people they serve. *Id.* As a result, the Court upheld the structure of Kent County's school board, which gave every local district a single delegate, without regard to the size or population of each district. *Id.* at 106–08.

The structure of the interim board is analogous to the appointive scheme that was upheld in *Sailors*, and it therefore withstands plaintiffs' equal protection claim. *Sailors* makes clear that the constitution does not require equal representation on an appointive school board. *Id.* at 108. The Court in *Sailors* also explicitly endorsed the right of states to experiment with novel approaches when establishing school boards, observing that local governments require "many innovations, numerous combinations of old and new devices, [and] great flexibility in municipal arrangements." *See id.* at 110. The constitutional legitimacy of the interim board is further supported by *Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999), where the Sixth Circuit upheld a school

No. 19-60063

board appointment system that left members of the district who lived outside of the city limits without any representation on the board, *id.* at 404–06.

Though *Sailors* placed limits on its holding, none of those limitations is relevant here. The Court was careful to explain that states are not permitted to manipulate the implementation of appointment structures in order to violate the constitution. *Sailors*, 387 U.S. at 108 (noting that states may not "manipulate [their] political subdivisions so as to defeat a federally protected right, as for example, by realigning political subdivisions so as to deny a person his vote because of race"). Here, however, plaintiffs are not pursuing a race-based discrimination claim, and they do not argue that the state acted with the intent to impinge on a fundamental right or to invidiously discriminate against a suspect class.

Thus, following *Sailors*, we hold that the appointive structure of the interim board implicates neither a fundamental right nor a suspect class. We agree with the district court that the interim board survives rational basis review. It was rational for the legislature to conclude that a board transition period would "best promote an efficient and smooth consolidation." By allowing Winona board members to retain their governance roles during this interim period, the statute gave state officials additional time to prepare for the upcoming Montgomery County elections, providing a short buffer period to help promote "stable school board membership" and governance. *See Irby v. Va. State Bd. of Elections*, 889 F.2d 1352, 1355 (4th Cir. 1989). Because this structure is rationally related to a legitimate governmental purpose, we affirm the district court's dismissal of the plaintiffs' claim against the interim board.[5]

B.

---

[5] To the extent that plaintiffs also allege that members of the interim board acted before they were statutorily authorized, this claim fails because any alleged unlawful actions were subsequently ratified by the interim board after it took office on July 1, 2018. *See, e.g.,*

No. 19-60063

Plaintiffs also argue that the structure of the permanent board violates the Equal Protection clause. Under the terms of the statute, residents of Montgomery County who live outside Winona vote for two members of the five-person board. *See* § 37-7-104.4(b)(ii). Although these residents constitute a majority of the County's population, they are entitled to elect fewer than half of the board's members. Plaintiffs assert that this scheme unconstitutionally dilutes the voice of Montgomery residents.

Unlike the interim board, the permanent board is partially elected and partially appointed. Though *Sailors* makes clear that there is no constitutional right to vote in school board elections, 387 U.S. at 108, the Supreme Court held in *Kramer v. Union Free School District No. 15*, 395 U.S. 621 (1969), that strict scrutiny is required when statutes "grant[] the franchise to residents on a *selective* basis," *id.* at 626–27 (1969) (emphasis added). When a statute restricts participation to only some eligible voters, "careful examination is necessary." *Id.* at 626. "Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Id.* Thus, while *Sailors* stands for the principle that states are not obligated to provide for school board elections, *Kramer* clarifies that once they decide to do so, the selective extension of the right to vote is subject to "exacting judicial scrutiny," *id.* at 628–29; *see also Hadley v. Junior Coll. Dist. of Metro. Kan. City, Mo. City*, 397 U.S. 50, 54 (1970) (affirming the importance of the one person-one vote requirement in the local

---

*R & L Inv. Prop., L.L.C. v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013) ("Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." (citation omitted)).

8

election context); *Avery v. Midland Cty., Texas*, 390 U.S. 474, 485–86 (1968) (same).

Though these cases emphasize that courts must apply strict scrutiny when evaluating local government structures that selectively withhold the right to vote, they do not support plaintiffs' argument that the court is obligated to compare the relative strength of the elective positions and the appointive positions on the permanent board. *Kramer* focuses on statutory schemes that extend the *franchise* in a selective manner. *See* 395 U.S. at 626–29; *see also Sailors*, 387 U.S. at 111 (holding that "the principle of 'one man, one vote' has no relevancy" to appointive selection schemes); *Mixon*, 193 F.3d at 405–06 ("If the municipal school boards were elected bodies and only the Cleveland residents could vote in the school board election, then . . . *Kramer* likely would apply, and problems of voter inclusion would arise."). Contrary to plaintiffs' contention, Supreme Court precedent does not compel the court to scrutinize the relative power of appointive and elective seats when analyzing the constitutionality of a blended school board structure. *See Sailors*, 387 U.S. at 110–11 (promoting "innovation[]" and "experimentation" when adopting representative schemes for local governance boards); *see also Cunningham v. Municipality of Metro. Seattle*, 751 F. Supp. 885, 894 (W.D. Wash. 1990) (holding that "appointed members of a mixed board should not be counted in calculating the [deprivation of the franchise], because the voters do not select them").

Under *Kramer*'s framework, courts must determine whether an election scheme unconstitutionally excludes potential voters from the pool of eligible voters. Viewing the school board structure from this perspective, plaintiffs' claim against the permanent board must fail. Although the statute excludes Winona residents from the franchise, plaintiffs do not live in Winona, so they are not among those potentially injured by the selective voting structure. Only

"voters who allege facts showing disadvantage to *themselves* as individuals have standing to sue." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 206 (1962)) (emphasis added). Plaintiffs do not argue that the two election districts in Montgomery violate the requirements of one-person, one-vote; instead, they focus their argument on the relative representation afforded to Winona residents, as compared to other residents of the County.

Because this claim is not supported by the law and plaintiffs lack standing to challenge the statute's selective grant of the franchise, we affirm the district court's dismissal of plaintiffs' claim against the permanent board.

C.

Third, plaintiffs argue that the defendants violated their rights when they fired Montgomery County School District employees and retained employees of the former Winona Municipal Separate School District. They assert that these actions discriminated against employees based on geographic affiliation, without regard to each employee's experience or skills.

As plaintiffs acknowledge, school district employees are not a suspect class, and there is no fundamental right to continued state employment. *See Rodriguez*, 411 U.S. at 54 (holding that classifications on the basis of geography are not suspect); *Arceneaux v. Treen*, 671 F.2d 128, 133 (5th Cir. 1982) ("[T]he right to hold public employment is not a recognized fundamental right."). Therefore, defendants' decision to terminate the employees must be upheld as long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Integrity Collision Ctr. v. Fulshear*, 837 F.3d 581, 589 (5th Cir. 2016). Defendants' actions survive this lenient standard. Winona was a higher performing school district than Montgomery, and the Superintendent may have felt that the most seamless

No. 19-60063

and efficient way to implement the consolidation would be to absorb the Montgomery district into the better-performing Winona district.

D.

Finally, for the reasons discussed above, we affirm the district court's denial of plaintiffs' motion for a temporary restraining order and a preliminary injunction.[6] In order to obtain a preliminary injunction, the movant must first establish a substantial likelihood of success on the merits, *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006). If the party requesting a preliminary injunction *cannot* show a substantial likelihood of success on the merits, the injunction should be denied and there is no need for the court to address the other requirements for a preliminary injunction. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003). Because plaintiffs' equal protection claims fail on the merits, they have not demonstrated a substantial likelihood of success. Therefore, they are not entitled to preliminary relief.

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[6] A temporary restraining order may be treated as a preliminary injunction when an adversarial hearing has taken place. *See* 11A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2951 (3d ed. 2019) ("[I]f there is an adversary hearing or the order is entered for an indeterminate length of time, the 'temporary restraining order' may be treated as a preliminary injunction."). The district court held a hearing on the parties' motions on December 4, 2018, before issuing its decision.